United States District Court
Southern District of Texas
**ENTERED**
July 31, 2017
David J. Bradley, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| XINYANG HUALONG MINERALS CO., LTD., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 4:16-cv-0104 |
| | § | |
| JOHN  DELGADO dba PETROFRAC GLOBAL LOGISTICS, | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER
## ON ATTORNEYS' FEES AND COSTS

Pending before the Court in this breach of contract case is Plaintiff Xinyang Hualong Minerals Co., Ltd.'s ("Plaintiff") "Rule 54(d) Motion for Attorney's Fees" ("Motion") [Doc. # 33].   Defendant John Delgado, doing business as PetroFrac Global Logistics ("Delgado" or "Defendant"), has not responded, nor requested additional time to do so.   The Motion is ripe for decision.   Having considered the Motion, the relevant case law, and all matters of record, the Court concludes that Plaintiff's Motion should be **granted**.

## I.     BACKGROUND

Following various steps to determine the proper parties to this case and the filings of Plaintiff's First Amended Complaint [Doc. # 18], Plaintiff's Request for

1

Clerk's Entry of Default against Defendant Petrofrac, LLC [Doc. # 21], and two motions for default judgment by Plaintiff against Delgado [Docs. # 9, # 31],[1] the Court granted Plaintiff's Motion for Default Judgment against Defendant John Delgado [Doc. # 31] on February 27, 2017.  *See* Final Judgment [Doc. # 32]. A Default Judgment was awarded in the amount of $542,350.74, plus court costs, pre-judgment interest of $30,163.61, and post-judgment interest at the applicable annual statutory rate, after Defendant failed to file any opposition.  *See id.*

Plaintiff now seeks an award of $43,030.72 in attorneys' fees and expenses, which sum Plaintiff states is the amount of fees and expenses actually charged by its attorneys in this case.  The Motion includes copies of all billing statements as of the date of the Motion.  *See* Exh. 1 to Motion [Docs. # 33-1].  Defendant has not responded in opposition to the Motion and the time to do so has expired.  The Motion is thus deemed unopposed.  S.D. Tex. Loc. R. 7.4.

## II.   **LEGAL STANDARD**

"In this diversity case, we apply state substantive law, but federal procedural law."  *Partners Lending Auto Group, L.L.C. v. Leedom Fin. Servs., L.L.C.*, 432 F.

---

[1]   Plaintiff's first Motion for Default Judgment [Doc. # 9] was mooted when the Court granted Defendant's request for additional time to obtain counsel and to respond to Plaintiff's Original Complaint.  *See* Order dated April 20, 2016 [Doc. # 11].

App'x 291, 294 (5th Cir. 2011) (citing *DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421, 427 (5th Cir. 2003)). "State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision." *Walker Int'l Holdings, Ltd. v. Republic of Congo,* 415 F.3d 413, 415 (5th Cir. 2005) (quoting *Mathis v. Exxon Corp.,* 302 F.3d 448, 461 (5th Cir. 2002)); *accord Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*, 775 F.3d 242, 248 (5th Cir. 2014).

Under Texas Civil Practices & Remedies Code § 38.001, a prevailing party is entitled to recover reasonable attorneys' fees for prosecuting a successful breach of contract claim. *See Kona Tech. Corp v. Southern Pac. Transp. Co.,* 225 F.3d 595, 603 (5th Cir. 2000). To recover attorneys' fees under § 38.001, a party must "(1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages." *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997); *accord In re Nalle Plastics Family Ltd.*, 406 S.W.3d 168, 172 (Tex. 2013) (citing *MBM Fin. Corp. v. Woodlands Operating Co., L.P.,* 292 S.W.3d 660, 666 (Tex. 2009)). "Under Texas law, when a prevailing party in a breach of contract suit seeks fees, an award of reasonable fees is mandatory, as long as there is proof of reasonable fees." *Mathis*, 302 F.3d at 462. "There is, however, discretion to determine the amount of the fee." *Id.*

Though the Texas Supreme Court has not ruled whether a specific method is required for calculating attorneys' fees under § 38.001, Texas courts have employed the "lodestar" method, the method that federal courts generally apply. *See Structural Metals, Inc. v. S & C Elec. Co*., 590 F. App'x 298, 308 n.6 (5th Cir. 2014) (per curiam) (unpublished) ("It is unclear whether the lodestar method is the correct method for calculating attorney's fees under section 38.001.  Some Texas cases indicate that use of the lodestar method is permissible but not mandatory under section 38.001[]") (internal citations and quotations omitted); *OneBeacon Ins. Co. v. T. Wade Welch Assocs.*, Civil Action No. H–11–3061, 2015 WL 5021954, at *3 (S.D. Tex. Aug. 24, 2015) (noting that "Texas courts generally do not *require* parties to use the lodestar method to prove the fees requested are reasonable[,]" and citing cases); *see also Gabbanelli Accordions & Imports, L.L.C. v. Hohner, Inc.*, Civil Action No. H–12–0381, 2014 WL 6674145, at *1 (S.D. Tex. Nov. 4, 2014) (concluding that "both federal and state law require primary reliance on the lodestar method."); *cf. Long v. Griffin,* 442 S.W.3d 253, 254–55 (Tex. 2014) (per curiam) (discussing evidence required to prove the reasonableness of attorneys' fees under the lodestar method).  Plaintiff's request for attorneys' fees references the lodestar method, and the Court assesses the fees' reasonableness under that framework.

Under the lodestar method, a presumptively reasonable fee award is the "lodestar" amount, which is determined by multiplying the number of hours reasonably expended on the litigation by the movant's attorneys by an appropriate hourly rate, which is the market rate in the community for the work at issue. *Combs v. City of Huntington, Tex.*, 829 F.3d 388, 391-92 (5th Cir. 2016); *Ransom v. M. Patel Enters., Inc.*, 734 F.3d 377, 388 & n.17 (5th Cir. 2013); *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013); *Mid-Continent Cas. Co. v. Chevron Pipe Line Co.*, 205 F.3d 222, 232 (5th Cir. 2000).  Though the lodestar is presumed reasonable, *see Combs*, 829 F.3d at 392, "[t]he court then adjusts the lodestar up or down based on reasonableness factors laid out in *Arthur Andersen . . . .*"  *See Structural Metals, Inc.* 590 F. App'x at 308 (citing *El Apple I, Ltd. v. Olivas,* 370 S.W.3d 757, 760 (Tex. 2012)).[2]

---

[2]  Federal district courts typically consider the twelve factors ("*Johnson* factors") set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974), *overruled on other grounds, Blanchard v. Bergeron*, 489 U.S. 87 (1989), to determine whether to increase or decrease the lodestar amount.  The *Johnson* factors are:

1.   The time and labor required to represent the client(s);
2.   The novelty and difficulty of the issues in the case;
3.   The skill requisite to properly perform the legal services;
4.   Preclusion of other employment by the attorney due to acceptance of the case;

(continued…)

In *Arthur Andersen & Co. v. Perry Equip. Corp.*, the Texas Supreme Court set forth eight factors listed in the Texas Disciplinary Rules of Professional Conduct useful in guiding a court's assessment of the reasonableness of attorneys' fees. *See* 945 S.W.2d 812, 818-19 (Tex. 1997) (quoting Texas Disciplinary Rules of Professional Conduct 1.04, reprinted in Tex. Gov't Code, tit. 2, subtit. G app. (State Bar Rules, art. X, § 9)). These factors ("*Andersen* factors") are:

(1)    the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

(2)    the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;

---

(continued…)
5.    The customary fee charged for those services in the relevant community;
6.    Whether the fee is fixed or contingent;
7.    The time limitations imposed by the client or circumstances;
8.    The amount involved and the results obtained;
9.    The experience, reputation, and ability of attorney(s);
10.    The undesirability of the case;
11.    The nature and length of the professional relationship with the client;
12.    Awards in similar cases.

*See id.*; *see also Heidtman v. County of El Paso*, 171 F.3d 1038, 1043 n.5 (5th Cir. 1999).

6

(3)     the fee customarily charged in the locality for similar legal services;

(4)     the amount involved and the results obtained;

(5)     the time limitations imposed by the client or by the circumstances;

(6)     the nature and length of the professional relationship with the client;

(7)     the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8)     whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

945 S.W.2d at 818.[3]

---

[3]     These factors are extremely similar to the *Johnson* factors. *See Northwinds Abatement, Inc. v. Empl'rs Ins. of Wausau*, 258 F.3d 345, 353 n.9 (5th Cir. 2001); *Maverick Indus., Inc. v. Am. Teleconferencing Servs., Ltd.*, 524 F. App'x 99, 101-02 (5th Cir. 2013) (per curiam) (unpublished). In *Mid-Continent Cas. Co. v. Chevron Pipe Line Co.*, 205 F.3d 222 (5th Cir. 2000), the Fifth Circuit stated that because the *Andersen* and *Johnson* factors involve "a similar analysis, it has *not* been necessary for our court to decide whether the *Johnson* factors control in Texas diversity cases." *Id.* at 232 (citing *Atlantic Richfield Co. v. Manges*, 702 F.2d 85, 87 (5th Cir. 1983) (additional citations omitted)). In *Structural Metals, Inc. v. S & C Elec. Co.*, however, the Circuit Court, without discussion, noted that the second step of a lodestar analysis for purposes of calculating attorneys' fees under § 38.001 is to adjust the lodestar based on the *Andersen* factors. *See* 590 F. App'x 298, 308 (5th Cir. 2014) (per curiam) (unpublished) (citing *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012)).

(continued…)

The *Andersen* factors are not elements of proof, but rather general guidelines to be considered when determining the reasonableness of a fee. *Bennigan's Franchising Co. v. Team Irish, Inc.*, Civil Action No. 3:11–CV–0364–D, 2011 WL 5921540, at *3 (N.D. Tex. Nov. 28, 2011). Courts discussing the reasonableness of fees in connection with § 38.001 commonly reference, for example, the necessity of a fee. *See, e.g.*, *Long*, 442 S.W.3d at 255. "Evidence of each factor is not necessary." *New York Pizzeria, Inc. v. Syal*, Civil Action No. 3:13-CV-00335, 2017 WL 1313759, at *5 (S.D. Tex. Apr. 5, 2017) (applying *Andersen* factors to award of attorneys' fees under the Texas Theft Liability Act). The Texas Supreme Court has noted, however, in discussing a lodestar analysis, that sufficient evidence supporting a request for fees "includes, at a minimum, evidence 'of the services performed, who performed them and at what hourly rate, when they were performed, and how much time the work required.'" *Long*, 442 S.W.3d at 255 (quoting *El Apple I*, 370 S.W.3d at 763).

---

(continued…)
Plaintiff's Motion references both the *Andersen* and *Johnson* factors. *See* Motion [Doc. # 33], at 2-5. The Court assesses Plaintiff's fee request under the *Andersen* factors, but the same conclusion would pertain under the *Johnson* factors.

The party seeking attorneys' fees bears the burden to document the appropriate hours expended and rates charged. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), *superseded by statute on other grounds as stated in Whitehead v. Colvin*, No. 15-5143, 2016 WL 1464469, at *2 n.1 (W.D. Wash. Apr. 14, 2016); *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995); *Tyler v. Cedar Hill Indep. Sch. Dist.*, 433 F. App'x 265, 267 (5th Cir. 2011). Courts should exclude from calculation all claimed time that is excessive, duplicative, or inadequately documented. *Combs*, 829 F.3d at 392; *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011).

## III.   <u>ANALYSIS</u>

Plaintiff formally has been represented in this matter by Brett Solberg of DLA Piper LLP (US) ("DLA Piper"), but Andrew Lai of the Law Offices of Andrew Lai ("Lai") also rendered services in support of Plaintiff.[4]   Both firms billed Plaintiff on an hourly basis. Solberg spent approximately 40 hours on this litigation and Lai devoted 50 hours. DLA Piper billed fees totaling $23,757.00 and $902.72 in expenses, and claims an additional $3,586.00 in fees incurred but not

---

[4]     *See* Declaration of Brett Solberg [Doc. # 33-1], at 1 ("Mr. Lai has been involved in every stage of this matter but has not made an appearance before the Court.")

billed as of the date of the Motion.  DLA Piper's hourly rate varied between $620

to $700 per hour, with the majority of hours billed at a fixed, reduced rate of $660

per hour.  *See* Declaration of Brett Solberg [Doc. # 33-1], at 1-2 ¶¶ 6-8.  Lai billed

Plaintiff a total of $14,785.00 in fees, at a flat rate of $300 per hour.

This case involved simple breach of contract and unjust enrichment claims

arising from a contract to manage and transport 15,000 metric tons of cargo for

Plaintiff.  Few pleadings were filed, and those were simple.  Aside from the

Original Complaint [Doc. # 1], the only documents prepared by Plaintiff's counsel

were the straightforward Joint Case Management Report under Federal Rule of

Civil Procedure 26(f), two similar motions for default judgment, a request for entry

of default against "Petrofrac LLC," an opposition to *pro se* Defendant Delgado's

motion to dismiss for failure to name the correct party defendant,[5]  which resulted

in Plaintiff's filing a First Amended Complaint [Doc. # 18], and the pending

---

[5]     The issue was the identity of the party with which Plaintiff contracted, Defendant personally, his d/b/a "Petrofrac," or "Petrofrac, LLC."   The First Amended Complaint contains various allegations with respect to "Delgado and/or Petrofrac [LLC]."  *See generally* First Amended Complaint [Doc. # 18].  Plaintiff ultimately abandoned its claim against "Petrofrac, LLC" because there was no evidence that that entity was a party to the underlying agreement.  Hearing Minutes and Order, dated February 7, 2017 [Doc. # 30].  Counsel spent approximately two hours on this issue, according to the billing statements provided.  *See* Exh. 1 to Motion [Doc. # 33-1].  These hours will be fully compensated in accordance with this Memorandum and Order.

Motion for Attorney's Fees.  The proper Defendant's identity was the only matter put in issue before the court.  Defendant repeatedly sought additional time to obtain counsel, but ultimately no counsel made an appearance.

It appears from the billing statements that Lai handled pre-suit matters, prepared an initial draft complaint, was the lead negotiator with Defendant, and conferred with Solberg repeatedly during the litigation.  With the exception of a paralegal, who billed a single hour to this matter, Solberg is the only billing individual at DLA Piper who recorded time on this matter.  The Court concludes, after careful consideration of the billing statements and the proceedings in this case, that the fees requested are out of proportion to the non-duplicative work necessary and reasonable in this case.  The lodestars proposed by Plaintiff for the two law firms' billings are too high.  Under the first *Andersen* factor, the fee requests by both firms will be reduced.[6]  "Requested fees must bear a reasonable relationship to the amount in controversy or to the complexity of the case."  *New York Pizzeria, Inc.*, 2017 WL 1313759, at *5 (citing *Northwinds Abatement, Inc. v.*

---

[6]  Although the Court has considered each of the *Andersen* factors, it will only address factors particularly probative in this context.  *See New York Pizzeria, Inc. v. Syal*, Civil Action No. 3:13-CV-00335, 2017 WL 1313759, at *5 (S.D. Tex. Apr. 5, 2017) (citing *Arthur J. Gallagher & Co. v. Dieterich*, 270 S.W.3d 695, 706 (Tex. App.—Dallas 2008, no pet.)).

*Emp'rs Ins. of Wausau*, 258 F.3d 345, 354 (5th Cir. 2001)).  And, as noted above, courts should exclude from calculation all claimed time that is excessive, duplicative, or inadequately documented.  *Combs*, 829 F.3d at 392; *McClain*, 649 F.3d at 381.

The Court concludes that Lai's billing rate was reasonable and customary for lawyers practicing in federal court in Harris County from similar sized law firms handling matters of this simple nature.  Lai, after suit was filed, spent time primarily negotiating with Defendant Delgado and conferring with Solberg.  Both groups of tasks were necessary.  However, regarding the number of hours billed, the Court finds that there was some unnecessary duplication of services in prosecution of this straightforward litigation.  For instance, Lai and Solberg each billed several hours for drafting the simple 5-page Original Complaint.[7]  For these reasons, the Court finds that 5 hours of the time spent by Lai was not reasonable as productive and efficient.

Solberg's hourly billing rate of an average of $660 was unnecessarily high.

---

[7]    There were numerous conferences throughout the case between Solberg and Lai, resulting in duplication of billing.  However, Lai, who is fluent in Mandarin and Cantonese, is Plaintiff's corporate counsel.  Based on the billing statements, it appears that Lai was the liaison between DLA Piper and Plaintiff.

P:\ORDERS\11-2016\0104MAttFees.docx  170728.1713

Further, certain tasks he performed, such as drafting simple submissions, should have been performed by Lai at his lower billing rate or by a very junior DLA Piper associate at a lower rate than Solberg's billing rate or, on occasion, were tasks that were ministerial in nature.[8]  While it is recognized that a senior associate may bill fewer hours to accomplish certain work, the total billed by DLA Piper is not reasonable under all the circumstances presented.  For these reasons, the Court will reduce Solberg's hourly rate to $500 per hour.

Accordingly, Plaintiff's fee request will be granted for 45 hours of Lai's time, for a total of $13,500, and 40 hours for work performed by DLA Piper, to be compensated at a rate of $500 per hour.  Therefore, Plaintiff is awarded fees totaling $20,000 for DLA Piper's work.

The expenses sought appear to be reasonable and necessary.  They will be awarded in full.

## IV.  CONCLUSION AND ORDER

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiff Xinyang Hualong Minerals Co., Ltd.'s Rule 54(d)

---

[8]  The Court does not criticize Solberg's billing rate in general, for complex litigation for which DLA Piper typically is known.  Rather, the issue is whether a person of his seniority should have been handling most of the tasks in this matter.

P:\ORDERS\11-2016\0104MAttFees.docx  170728.1713

Motion for Attorney's Fees [Doc. # 33] is **GRANTED in accordance with this Memorandum and Order**.  Plaintiff is awarded fees of $13,500 for Lai's work and $20,000 for DLA Piper's work, and expenses of $902.72, for a total fee and expense award of $34,402.72

No prejudgment interest is awarded.

SIGNED at Houston, Texas, this  28th  day of **July, 2017**.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE